————o————

## No. 3323.

(Court of Appeal, Parish of Orleans.)

## FRANK A. EBERLE vs. Mrs. ANNA. BITTLE.

1. To annul a judgment predicated on a confession of judgment subscribed to by a feme sole as having been obtained from her through fraud and ill-practices, the evidence must, in that respect, be clear and conclusive. 11 La. 139.

2. Scrutiny and appreciation of the evidence of record do not conclusively show the characteristics of fraud notwithstanding prior to this suit the immoral relations of the parties litigant, and do not warrant the upholding of the decree annulling the judgment based on such a confession of judgment.

Appeal from Civil District Court Division D.

F. Rivers Richardson, for Plaintiff and Appellant.

Edwin, Laizer and G Fernandez, for Defendant and Appellee.

BEAUREGARD, J. The only question before this Court is whether or not the judgment annulling the one predicated on a confession of judgment by Mrs. Anna Bittle in favor of appellant here in the sum of $136, is correct because it is alleged, and it is contended, proven, that such confession of judgment was obtained through fraud, undue influence, misrepresentation, error, abuse of defendant's ignorance and the want of consideration in the notes, upon which was partly founded said confession of judgment.

It may be well stated at the outset that the charges enumerated above are restricted to the appellant alone.

Now, without reference to the specific dates of the various pro-

ceedings which were offered in evidence and make part of the record now on appeal the following may be stated as leading up to the present suit.

It appears that Frank A Eberle a married man, who had voluntarily separated from his wife and children, became the boarder of defendant's mother. At her death, being succeeded in this occupation of landlady by her daughter, the present defendant, who owned the property where she carried on her business No. 1323-5 St Anthony street, the Defendant lived for seven years with appellant as "man and wife."

During such intimacy business relations sprung up between them and in time, the appellant became the owner of a certain mortgage note of $175. resting on Defendant's property and in the year 1902, January and April of that year, of two notes of $50, each drawn by Defendant to Appellant's order and endorsed by C. Driscoll her Brother-in-Law or the husband of her sister.

Through the intervention of her brother-in-law and of her sister steps were taken to extinguish the $175 mortgage note alluded to above; and one of the Homesteads was appealed to for assistance. This appeal was answered and the sum of about $600 was advanced, out of which the mortgage note of $175 was paid. At the settlement of this note, no further claim was then made by that creditor.

Shortly thereafter, appellant registered in the Mortgage Office a certain claim for repairs amounting to $18, made by him to defendant's property. Having in the meantime placed for collection defendant's two promissory notes of $50 each in the hands of the notary Morgan Gurley by whom they were transferred to Mr. F. R. Richardson, attorney, for collection.

Desirous of settling his client's claim of the two notes, amount for repairs and a further claim of cash advanced of $16, with costs for affidavit and recordation of the repair privilege of $2, the whole amounting to the sum stated above, to-wit: $136 and of saving any costs of Court, Mrs. Bittle who, at the instance of the appellant, had called on Mr. Richardson, consented to a confession of judgment which was drawn up and signed by her, after having been fully apprised of the step to which she had consented. Thereafter, unsettled in mind and purpose, she attempted by suit in one of the City Courts and under the guidance of other Counsel to have cancelled the repair privilege alluded to above, on default of the then defendant's counsel and client judgment resulted in her favor. On appeal to this Court and on the showing then made that the same question was involved, i. e. the validity of the claim for $18, as well as the $16 referred to were before the Lower Court in a suit to annul the judgment on the confession of judgment, this Court reversed the judgment appealed from.

In the meantime, it appears that a fi-fa issued under the confessed judgment was stayed by injunction and under the defense that the property had been disposed of under a simulated sale, the injunction was dissolved; on appeal to this Court this decree was

affirmed, thus leaving still pending and undisposed of, the suit for annulment of the decree founded on the confession of judgment.

It would seem further that when confession of judgment was signed by the defendant, she at about that time requested Mr. Richardson to institute proceedings to annul the simulated sale allnded to above, although she had been a party to that sale, and then and there gave him what is termed in the pleadings an irrevocable power of attorney. That when, on appeal to this Court, to set aside the decree ordering the cancellation of appellant's privileged claim of $18, she by affidavit disclaimed her authorization of the institution of such proceedings. That although she by power of attorney (the irrevocable power) authorized Mr. Richardson to bring suit to annul the simulated sale of her property, yet by counter affidavit disclaimed its prosecution.

Reference to the incidents in these various proceeding showing that the defendant had sworn either one way or the other and therefore evidencing her mental derangement, does not necessarily prove that fact. For it would seem that she was, throughout these prcceedings, in possession of her mental faculties only when acting under the guidance of counsel opposed to Eberle's counsel and who held her power of attorney and her several affidavits, and deranged only when the latter acted for her.

On reading with attentive scrutiny the evidence of record, it must be noted that none of the affidavits signed by the defendant as well as her power of attorney had been drawn up without her having been fully apprised of the contents of these documents. The power of attorney was read to her twice and explained to her and the witnesses who testified to this further fact, stated in Court, where the defendant then was, that she, at the time of her signing, looked as rational as she did in Court, yet she had just (or shortly before) returned from the Louisiana Retreat, where she, on the asserted entreaty of Eberle had been sent either by himself or her sister, because she had been in a deranged mental condition brought on by excessive drinking, cocaine, and other causes; and in which condition it is intimated she then was when she swore to the affidavits, the power of attorney and when she signed the notes and consented to and also signed the addition to one of these notes of 8 per cent interest thereon and to the reduction of the 10 per cent which the other note bore to the conventional interest of 8 per cent, all of which it is urged was due to the Eberle influence.

The evidence shows that only once appellant went with the defendant to his counsel's office. The rest of the time she went alone.

That if interest was added to one note and reduced on the other it was by her consent and after the matter had been fully explained to her. That if she denies the consideration of these notes, that consideration was fully accounted for; whilst these notes bear the endorsement as surety of C. Driscoll the brother-in-law of the defendant who, at about that period of time, was considered (to-

wit, January and April 1902) in such a mental condition as to have been sent in March of that year to the Louisiana Retreat.

Either her brother-in-law who knew her well and with whom she at times resided, must have known of her mental condition or he did not. If he did not then it was not apparent and the defendant must have appeared to him as she did in the office of Mr. Gurley and then in Court, perfectly rational. If he did know it then he was contracting as a surety who knew the existence of the obligation he secured, in obtaining a credit of 3 and of 6 months, for one he knew would not ultimately, or could not be made ultimately to pay it.

A surety on a note warrants the existing obligation of the maker and binds himself to satisfy it if the debtor does not. 27 A. 317, R. C. C. 3035.

Driscoll failed to testify in this case and against the positive evidence of Eberle, as to the consideration of these notes, as well as to the two items referred to, stands out the wavering negative testimony of the defendant.

This Court appreciates the doctrine that where parties tainted with moral turpitude, respectfully urge the same either as a means to recovery or as a defense, the parties are left in the situation in which they were; but in this case, although the evidence shows, that the litigants had both violated in the most outrageous manner the moral law, yet the matter submitted to the Court was simply one of indebtedness vel non and upon which rested a confession of judgment and a judgment confirming it. This Court is of opinion that the judgment appealed from is erroneous and should be reversed.

It is therefore ordered, adjudged and decreed that said judgment be avoided and reversed. And it is now ordered and decreed that appellee, Mrs. Anna Bittle's demand in her action of nullity be rejected at her costs in both Courts.

Rehearing refused January 11, 1904.